```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                      DALLAS DIVISION

DEBRA R. MILLER, et al.,        §
                                §
               Plaintiffs,      §
                                § Civil Action No. 3:06-CV-1466-D
VS.                             §  (Consolidated with
                                §  Civil Action No.
GIESECKE & DEVRIENT AMERICA,    §  3:06-CV-2386-D)
INC.,                           §
                                §
               Defendant.       §
```

MEMORANDUM OPINION
AND ORDER

Plaintiffs Debra R. Miller ("Miller") and De La Rue Cash Systems, Inc. ("DLR") move to remand this removed case to state court and for an award of attorney's fees, and defendant Giesecke & Devrient America, Inc. ("GDAI") moves to dismiss DLR's claims and to transfer venue. After the motions were filed, a related suit that GDAI filed against Miller in the Northern District of Ohio was transferred to this court and consolidated with the present case. For the reasons that follow, the court grants the motion to remand to the extent that it remands the removed case (but not the one transferred here from Ohio) to state court. The court denies plaintiffs' request for attorney's fees, and it does not reach GDAI's motion to dismiss or motion to transfer.[1]

---

[1] Although the court is not deciding GDAI's motion to dismiss, it has considered the parties' briefs related to the motion because they present arguments that bear on whether DLR was fraudulently joined as a plaintiff.

I

Miller and DLR filed suit in state court seeking a declaratory judgment under the Texas Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-37.011 (Vernon 1997), construing Miller's rights, status, and other legal relations affected by a non-compete agreement with GDAI. They essentially seek a declaration that the non-compete agreement is unenforceable under Texas law (which they contend controls over Virginia law), and—more important in deciding the present remand motion—that GDAI is unlawfully interfering with DLR's ability to employ Miller. GDAI employed Miller from May 2000 until July 2006, when she resigned and went to work for DLR. Miller and DLR maintain that GDAI is acting unreasonably in interpreting an overly broad non-compete agreement between Miller and DLR to preclude her from working for DLR, and that it has threatened to take action to interfere with her job at DLR.

GDAI removed the case to this court based on diversity of citizenship. DLR and GDAI are both citizens of Delaware. To avoid the jurisdictional problem presented by the lack of complete diversity, GDAI maintains that DLR's citizenship must be disregarded because DLR is not a proper party and has no standing to bring a declaratory judgment action based on a non-compete agreement to which it is not a party.

Plaintiffs move to remand the case to state court, contending

that there is not complete diversity, that GDAI is essentially arguing a fraudulent joinder theory on which it cannot succeed, and that GDAI has not established that the amount in controversy exceeds $75,000, exclusive of interest and costs. GDAI opposes the motion and separately moves to dismiss DLR's claim and to transfer this action under 28 U.S.C. § 1404(a) to the Northern District of Ohio.

II

As a threshold matter, the court addresses GDAI's contention that it is not relying on fraudulent joinder to establish that the case is removable.[2] GDAI maintains that it is arguing instead that DLR is not a proper party and has no standing. GDAI's position is literally true in the sense that this case does not present the typical formulation of fraudulent joinder, in which a nondiverse *defendant* is said to have been fraudulently joined. Some courts, however, including several district courts in this circuit, have assessed the removability question under a similar standard when the issue involves a nondiverse *plaintiff*.

---

[2]GDAI uses the former term "fraudulent joinder," probably because plaintiffs do. In this circuit, however, the term "fraudulent joinder" has been replaced by "improper joinder." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc) ("We adopt the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred."). In some instances the court will use "fraudulent joinder," because the parties do, and in others will use "improper joinder," such as when quoting a case.

"The fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff." *Miller v. Home Depot, U.S.A., Inc.,* 199 F.Supp.2d 502, 508 (W.D. La. 2001) (citing *Elk Corp. of Tex. v. Valmet Sandy-Hill, Inc.*, 2000 WL 303637 (N.D. Tex. 2000); *Sims v. Shell Oil Co.*, 130 F.Supp.2d 788, 796 (S.D. Miss. 1999); *Lerma v. Univision Commc'ns, Inc.*, 52 F.Supp.2d 1011, 1014 (E.D. Wis. 1999); *Oliva v. Chrysler Corp.*, 978 F. Supp. 685, 689 (S.D. Tex. 1997); *Nelson v. St. Paul Fire & Marine Ins. Co.*, 897 F. Supp. 328, 331 (S.D. Tex. 1995)). In *Elk Corp. of Texas* Judge Fish addressed the question whether the fraudulent joinder doctrine applies to a joined plaintiff. *Elk Corp. of Tex.*, 2000 WL 303637, at *1-*2. One of the plaintiffs had contended "that the doctrine of fraudulent joinder applies only to the joinder of nondiverse defendants and thus is inapplicable where, as here, a plaintiff has joined another nondiverse plaintiff." *Id.* at *2. Judge Fish rejected this argument. He noted that "[t]he Fifth Circuit has not confined its application of the fraudulent joinder doctrine to fraudulently joined defendants but has extended the doctrine to fraudulently joined claims." *Id.* (citing *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)). After analyzing the Fifth Circuit's decision in *Lackey*, Judge Fish held "that the fraudulent joinder doctrine may be applied where a defendant claims that a plaintiff has been fraudulently joined." *Id.* He also relied on district court decisions in this circuit to support this

- 4 -

conclusion. *Id.* (citing and discussing cases).

Despite GDAI's assertion that it is not relying on fraudulent joinder, it is effectively invoking a closely analogous doctrine by contending that DLR is not a proper party and lacks standing. Applying *Elk Corp. of Texas* and the other decisions that reach a similar result, the court concludes that the question whether DLR's presence as a nondiverse plaintiff precludes removal based on diversity of citizenship is to be analyzed under this circuit's fraudulent joinder standard. *See, e.g., Hodach v. Caremark Rx, Inc.*, 374 F.Supp.2d 1222, 1225-26 (N.D. Ga. 2005) (after concluding that fraudulent joinder standard applied to nondiverse plaintiff, applying Eleventh Circuit fraudulent joinder jurisprudence).[3]

> [W]here the removing party alleges a non-diverse plaintiff has been fraudulently joined, the removing party must prove that either: (1) the non-diverse plaintiff cannot state a cause of action against the defendants in state court (for example, where the non-diverse plaintiff's claims are barred as a matter of law or the non-diverse plaintiff is not a real party in interest); or (2) the plaintiff has fraudulently pleaded jurisdictional facts to destroy complete diversity.

---

[3]*Hodach* has similarities to the present case. The plaintiffs sued in state court alleging that certain restrictive covenants ancillary to the plaintiff's previous employment with the defendants were unenforceable under Georgia law. They sought a declaratory judgment and injunctive relief against the defendants. *Hodach*, 374 F.Supp.2d at 1223. Following removal, the court granted the plaintiffs' motion to remand, concluding that the nondiverse plaintiff had not been fraudulently joined. *Id.* at 1225-26.

*Id.* at 1224.

### III

#### A

"The doctrine of improper joinder . . . entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).[4]  "When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Id.* at 576.  Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiffs are unable to establish a cause of action against the nondiverse defendant in state court.  *Id.* at 573 (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)).

Under the second alternative—the one at issue in this case—the test for improper joinder "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Id.*

---

[4]The cases the court now discusses address improper joinder in the context of a *defendant*, but they apply by extension in the context of this case, which involves a nondiverse *plaintiff*.

There are two "proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law." *Smallwood*, 385 F.3d at 573.

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.

*Id.* (footnote omitted). In cases where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The decision to conduct such an inquiry rests within the discretion of the trial court and "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Id.* at 574.

B

GDAI maintains that DLR is not a proper party and lacks standing to seek a declaratory judgment because it was neither a party to, nor a third-party beneficiary of, the agreement between GDAI and Miller that contains the non-compete provision. GDAI argues that DLR has no real, justiciable interest in this

- 7 -

declaratory judgment action, which seeks to establish the rights and obligations of Miller and GDAI. It reasons that DLR could only be a real party in interest if applicable state contract law afforded DLR the right to sue over a contract to which it is not a party, which GDAI contends neither Virginia nor Texas law does. GDAI argues that DLR has no true interest in the rights and obligations of GDAI and Miller under the contract between them and no legitimate stake in the declaratory judgment action. Relying on the central premise that DLR must be, but is not, a real party in interest, GDAI posits that DLR has no right to declaratory judgment relief and that its nondiverse citizenship can be disregarded for purposes of determining removability based on complete diversity.

This court has found support in Texas caselaw, however, for a broader reading of the Declaratory Judgments Act. In *Texas Department of Public Safety v. Moore*, 985 S.W.2d 149 (Tex. App. 1998, no pet.), the court of appeals addressed the defendant's jurisdictional challenge based on the contention that the Declaratory Judgments Act did not create a cause of action that enabled the plaintiff to obtain an interpretation of a Labor Code provision that itself did not create a cause of action. *Id.* at 153. The court explained:

> A suit under the UDJA is not confined to cases in which the parties have a cause of action apart from the Act itself. A declaratory judgment, however, is appropriate only if (1) a justiciable controversy exists as to the rights and status of the parties; and (2) the controversy will be resolved by the declaration sought. A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute. A justiciable controversy must be distinguished from an advisory opinion, which is prohibited under both the Texas and federal constitutions. A judgment under the UDJA depends on a finding that the issues are not hypothetical or contingent, and the questions presented must resolve an actual controversy. A justiciable controversy, however, does not necessarily equate with a fully ripened cause of action[.]

*Id.* (citations omitted). *Texas Department of Public Safety* cited, *inter alia*, *Transportation Insurance Co. v. Franco*, 821 S.W.2d 751 (Tex. App. 1992, writ denied). Although *Transportation Insurance Co.* probably presents a stronger case for the proper use of the Declaratory Judgments Act than does the instant one (in that case, both parties to the declaratory judgment action were also parties to the prior settlement agreement at issue), it contains similar statements about the requirements for bringing such an action.

> A suit under the Act is not confined to cases in which the parties have a cause of action apart from the Act itself. An actual right of action in one party against another in which consequential relief might be granted need not exist before one is entitled to file suit for declaratory relief.

*Id.* at 754 (citation omitted).

In other words, contrary to the out-of-state decisions that GDAI cites in its brief, there are Texas cases that support the premise that DLR is *not* required to have a viable cause of action against GDAI that is separate from the declaratory judgment action. What is necessary is that there be a justiciable controversy as to the rights and status of the parties—a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute—and the controversy will be resolved by the declaration sought.[5]

> The stated purpose of the Declaratory Judgments Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. The statute expressly provides that it is remedial and is to be liberally construed.
> A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute.
> . . .
> The authority to grant a declaratory judgment like the one sought in this case flows from the general powers of the courts to enter a declaratory judgment given under the

---

[5]GDAI's reliance on *Stewart Family Funeral Home, Ltd. v. Funeral Directors' Life Insurance Co.*, 410 F.Supp.2d 514 (E.D. Tex. 2006), appears to be misplaced. Although the court analyzed Texas law, it did so in order to determine whether the plaintiff had standing under Article III of the United States Constitution to obtain a declaratory judgment, not whether the plaintiff had standing or a viable claim under the Texas Declaratory Judgments Act. *See id.* at 516-17.

> Declaratory Judgments Act. A trial court has discretion to enter a declaratory judgment so long as it will serve a useful purpose or will terminate the controversy between the parties.

*Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467-68 (Tex. 1995) (citations and internal quotation marks omitted).

GDAI has failed to establish under the controlling fraudulent joinder standard that there is no justiciable controversy between DLR and GDAI that will be resolved by the declaratory judgment action. In other words, it has not shown that there is no reasonable basis for this court to predict that DLR might be able to obtain a judgment declaring that GDAI is unlawfully interfering with DLR's ability to employ Miller. According to the state court petition that Miller and DLR filed, Miller signed a non-compete agreement when she began her employment with GDAI. GDAI has "threatened to enforce the Non-Compete Agreement in a manner which would preclude [Miller] from working for DLR." Pet. § IV. GDAI has also "threatened to take action to interfere with Miller's employment at DLR." *Id.* DLR and Miller thus ask the court to construe Miller's rights, status, or other legal relations affected by a non-compete agreement with GDAI and declare the rights, status, and legal relations thereunder. They specifically request a declaration that GDAI "is unlawfully interfering with DLR's ability to employ Miller." *Id.* at § V. As pleaded, this request for a declaratory judgment is not hypothetical or contingent. According to Miller and DLR, GDAI has already threatened to enforce

the non-compete agreement in a manner that would preclude Miller from working for DLR, and it has already threatened to take action to interfere with her employment at DLR. Miller and DLR sue for a declaratory judgment that GDAI is unlawfully interfering with DLR's ability to employ Miller.

Among the decisions that GDAI cites in opposition to the remand motion is a Fifth Circuit opinion that is factually distinguishable. In *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319 (5th Cir. 2001), the Fifth Circuit addressed, in relevant part, whether the applicant for a letter of credit had been fraudulently joined as a defendant in a declaratory judgment action. *Id.* at 323-24. The plaintiff, Heritage Bank, had issued the letter of credit to Fiber Wave Telecom, Inc. ("Fiber Wave"), which used it to purchase electronics from Redcom Laboratories, Inc. ("Redcom"). *Id.* at 322. A dispute arose between Redcom and Fiber Wave, and state-court litigation ensued among the three parties concerning whether Heritage Bank was obligated to honor the letter of credit. After that case was dismissed, Heritage Bank filed a declaratory judgment action against Fiber Wave and Redcom in state court, which Redcom removed. Redcom contended that Heritage Bank had joined Fiber Wave as a defendant to destroy diversity jurisdiction, and the district court agreed.

On appeal, Heritage Bank contended that it had sued under the Uniform Declaratory Judgments Act, and that because Fiber Wave

- 12 -

would be liable to the bank for reimbursement if the bank had to honor Redcom's presentment under the letter of credit, Fiber Wave had an interest that would be affected by the declaration. *Id.* at 323-24. The circuit court rejected this argument as a basis for concluding that Fiber Wave had been properly joined as a defendant. It pointed out that the declaratory judgment could not itself trigger Fiber Wave's reimbursement obligation, which would be imposed only when the bank honored a presentment under the letter of credit; the declaratory judgment could not order the bank to pay Redcom anything, but merely resolved questions regarding the rights of the parties; and Texas law prohibited a court from ordering a bank to honor a letter of credit in the context of a declaratory judgment. *Id.* at 324. The panel concluded that Texas law required a justiciable controversy before a party could properly be joined in a declaratory judgment action, and if the resolution of a controversy depended on contingent or hypothetical facts, or on events that had not yet come to pass, it was not ripe for review. *Id.* (citation omitted). The court reasoned that Heritage Bank's claim against Fiber Wave for reimbursement was contingent on a finding that the bank had improperly dishonored Redcom's presentments. Consequently, although Fiber Wave had an interest in the outcome of the case, it had no interest in the current controversy. Because Heritage Bank's claim against Fiber Wave was not presently justiciable, the district court properly determined

- 13 -

that the bank could establish no claim against Fiber Wave. *Id.* Additionally, the court noted that the arrangement under a letter of credit exists to allow the credit issuer's obligation to the beneficiary to operate independently of its underlying agreement with the applicant. Therefore, although the declaration of the rights of Heritage Bank and Redcom under the letter of credit ultimately might have affected Fiber Wave, Fiber Wave had no legal interest in the current dispute. *Id.*

In contrast with the contingent nature of the dispute in *Heritage Bank*, GDAI has failed to establish under the controlling fraudulent joinder standard that there is no justiciable controversy between DLR and GDAI that will be resolved by the declaratory judgment action. Consequently, the court holds that GDAI has failed to show that there is no reasonable basis for this court to predict that DLR might be able to recover against GDAI. Complete diversity is therefore lacking, and the removed action that is part of these consolidated cases must be remanded to state court.

C

Miller and DLR request that the court award them attorney's fees under 28 U.S.C. § 1447(c) or Fed. R. Civ. P. 11. The court denies the request.

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an

objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 711 (2005) (citing *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)).  The court holds that there was an objectively reasonable basis for GDAI to remove this action because there are cases that support a colorable—albeit erroneous—argument that DLR lacked a sufficient interest in the Miller-GDAI non-compete agreement to seek a declaratory judgment.

Nor are plaintiffs entitled to Rule 11-based attorney's fees. They did not comply with the procedure and safe harbor provision of Rule 11(c)(1)(A).  And even if they had, the court would decline, for the reasons it is rejecting a fee award under § 1447(c), to hold that GDAI violated Rule 11.

                        *       *       *

Accordingly, plaintiffs' August 24, 2006 motion to remand is granted because this court lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c).  The case originally docketed as Civil Action No. 3:06-CV-1466-D is remanded to the 14th Judicial District Court of Dallas County, Texas.  The clerk shall effect the remand in accordance with the usual procedure.  Plaintiffs' request for attorney's fees is denied.

The case transferred to this court and originally docketed as

Civil Action No. 3:06-CV-2386-D remains pending in this court. Henceforth, all pleadings filed in the remaining case must be filed under Civil Action No. 3:06-CV-2386-D, and the clerk of court is directed to reopen that case statistically.

GDAI's August 25, 2006 motion to dismiss claims of plaintiff DLR and motion to transfer venue are denied.

**SO ORDERED.**

February 20, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE